UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TYLER BOWSER,

Plaintiff,

v.

LIN R. ROGERS ELECTRICAL CONTRACTORS, INC., et al.,

Defendants.

No. 2:25-cv-03094-DAD-CKD

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING THESE PROCEEDINGS PENDING ARBITRATION

(Doc. No. 12)

This matter is before the court on defendants' motion to compel arbitration and stay proceedings. (Doc. No. 12.) On February 3, 2026, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 15.) For the reasons explained below, the court will grant defendants' motion.

**BACKGROUND**

On September 12, 2025, plaintiff Tyler Bowser filed a wage-and-hour class action against defendants Lin R. Rogers Electrical Contractors, Inc. and Rogers Electric Service Corporation in Sacramento County Superior Court. (Doc. No. 1-2 at 1.) On October 24, 2025, defendants removed the action to this federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. No. 1 at 2.) In his complaint, plaintiff asserts claims on behalf of a putative class for: (1) Failure to Pay Minimum Wage; (2) Unpaid Overtime; (3) Failure to Provide One Day's Rest in Seven;

(4) Meal Break Violations; (5) Rest Break Violations; (6) Wages Not Timely Paid During Employment; (7) Wage Statement Violations; (8) Untimely Final Wages; (9) Failure to Reimburse Necessary Business Expenses; and (10) Unfair and Unlawful Business Practices. (Doc. No. 1-2 at ¶¶ 34–104.)

On January 4, 2023, plaintiff signed an agreement titled, "Arbitration Agreement (California Employees)" (the "Agreement"). (Doc. Nos. 12-1 at 6–8; 12-2 at 16; 18 at 9.) On January 30, 2026, defendants filed their pending motion to compel arbitration and accompanying request for judicial notice,[1] arguing that the Agreement mandates arbitration of plaintiff's claims. (Doc. Nos. 12, 13.) On February 27, 2026, plaintiff filed his opposition. (Doc. No. 18.) On March 9, 2026, defendants filed their reply thereto. (Doc. No. 20.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. There is generally a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 504 (2018). The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the [FAA] . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

---

[1] The court need not consider the documents listed in defendants' request for judicial notice (Doc. No. 13) in resolving plaintiff's pending motion to compel arbitration. Accordingly, that request is denied as moot. *See Langer v. Music City Hotel LP*, No. 21-cv-04159-PJH, 2021 WL 5919825, at *5 (N.D. Cal. Dec. 15, 2021) ("The court does not consider this exhibit in deciding this motion, and it therefore denies as moot the request for judicial notice of the exhibit.").

"When deciding a motion to compel arbitration, a district court must treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 922 (N.D. Cal. 2023) (internal quotation marks and citation omitted); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") (internal quotation marks and citation omitted).

## DISCUSSION

Defendants argue that the Agreement contains a delegation clause, which delegates questions regarding the arbitrability of plaintiff's claims to an arbitrator. (Doc. No. 12-1 at 7–18.) Plaintiff responds that the parties did not form a valid arbitration agreement because defendants failed to perform a condition precedent to formation and the Agreement lacks consideration. (Doc. No. 18 at 14.) Plaintiff further argues that the delegation clause (1) is not clear and unmistakable enough to overcome the presumption that the court decides threshold issues of arbitrability and, alternatively, (2) is unconscionable and therefore unenforceable. (*Id.* at 11–26.) The court addresses each of these arguments in turn.

### A. Agreement Formation

"[T]he issues reserved to the courts for decision 'always include' whether an arbitration agreement was formed, even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (citation omitted). "That principle follows from the fundamental premise that arbitration is strictly a matter of consent." *Id.* (internal quotation marks and citation omitted). "To take the question of contract formation away from the courts would essentially force parties into arbitration when the parties dispute whether they ever consented to arbitrate anything in the first place." *Id.* (citation omitted).

"Importantly, the federal policy favoring arbitration of labor disputes plays a role only after a court has been satisfied that an arbitration agreement was 'validly formed.'" *Int'l Bhd. of*

*Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)). "[C]ourts apply an arbitrability presumption 'only where a *validly formed and enforceable* arbitration agreement is ambiguous about whether it covers the dispute at hand.'" *Id.* (quoting *Granite Rock Co.*, 561 U.S. at 301). "To determine whether the parties formed an agreement to arbitrate, courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under California law, . . . the moving party[] must prove by a preponderance of the evidence that an agreement to arbitrate exists." *Id.*

Plaintiff argues that formation of the Agreement was conditioned on payment of a $250 bonus *after* signing and that the Agreement is invalid because defendants paid the bonus *before* signing. (Doc. No. 18 at 14–16.) Plaintiff argues that the following language in the Agreement's recital supports this claim: "[I]n consideration of the mutual promises contained in this Agreement, Employee's continued employment with Employer, and the payment to Employee of $250 as an arbitration agreement bonus to which Employee would not otherwise be entitled, agree as follows." (*Id.* at 15; Doc. No. 12-2 at 12.) In response, defendants argue that (1) plaintiff cannot show a lack of condition precedent because there is no language in the Agreement that required defendants to pay the $250 bonus concurrently with or subsequent to plaintiff signing the Agreement and (2) that the $250 bonus is simply "part of the consideration package," which includes other promises. (Doc. No. 20 at 9.)

"Conditions precedent are not favored in the law, and courts shall not construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect." *Frankel v. Bd. of Dental Examiners*, 46 Cal. App. 4th 534, 550 (1996) (citations omitted). Such "plain and unambiguous" language is absent here. *See id.* The recital itself characterizes the $250 payment as a form of consideration by using the phrase "in consideration of," and does not contain expressly conditional language. (*See* Doc. No. 12-2 at 12.) Accordingly, the court finds that the $250 arbitration bonus paid to plaintiff is not a condition precedent to formation of the contract, and any disputes regarding the payment are questions of performance under the contract that must be heard by the arbitrator. *See Poublon v.*

*C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (finding that the clause "In consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree as follows" was "boilerplate[,] merely establish[ing] [that] there is consideration for the agreement"). *But see International Brotherhood of Teamsters v. NASA Services*, 957 F.3d at 1038 (finding a condition precedent to formation where the arbitration agreement specified that the "terms of th[e] Agreement shall only become operative if . . . [certain conditions were] satisfied").

In addition to lacking condition precedent, plaintiff also argues that the Agreement is voidable because it lacks consideration. (Doc. No. 18 at 16.) Defendants respond that the Agreement is supported by alternative sources of consideration, including the mutual promises to arbitrate and plaintiff's continued employment. (Doc. No. 20 at 10.) Defendants are correct in that the mutual promises to arbitrate future disputes form sufficient consideration. *See Cir. City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002), *abrogated on other grounds by Gentry v. Superior Court*, 42 Cal. 4th 443, 472 n.10 (2007) ("Circuit City's promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration."). Accordingly, the court finds these mutual promises are valid consideration, forming an enforceable contract. *Id.* (noting that the "promise to be bound by the arbitration process itself serves as adequate consideration.").

**B. Whether the Delegation Clause is Clear**

"[P]arties are free to delegate the adjudication of the gateway questions to the arbitrator, so long as they do so 'clearly and unmistakably.'" *Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 926 (C.D. Cal. 2024) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). "As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that [a] court might also find provisions in the contract

unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." *Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1197 (2023) (internal citations and quotation marks omitted), *review denied* (Sept. 13, 2023); *see also Ruiz v. S. Tire Mart, LLC*, No. 2:24-cv-03429-SPG-E, 2025 WL 2025633, at *11 (C.D. Cal. Jan. 22, 2025) (holding that the parties did not "clearly and unmistakably delegate[] to the arbitrator exclusive authority to decide whether the arbitration provision is valid" where the "arbitration provision point[ed] in two directions on the question whether a court or an arbitrator is to decide the enforceability of the agreement").

Plaintiff does not contest the existence of the Agreement, the delegation clause, or that he signed the Agreement. (*See* Doc. No. 18.) Instead, plaintiff argues that the Agreement's severability clause renders the delegation clause ambiguous by referencing a court. (*Id.* at 11–12.) Defendant responds with a difficult-to-decipher argument that the delegation clause should be considered separate from the rest of the Agreement and that there is no ambiguity because the Agreement "expressly delegated" enforceability and validity questions to arbitration. (Doc. No. 8–9.)

The Agreement provides the following under the heading "<u>ARBITRATOR DECIDES ARBITRABILITY</u>":

> The Parties agree that, to the fullest extent allowed under the Federal Arbitration Act or, if inapplicable, the California Arbitration Act, that the Arbitrator, and not the court, has the exclusive jurisdiction and power to decide whether this agreement is legally valid or enforceable as a contract (including whether it is "unconscionable" or in violation of public policy). The Arbitrator also has the exclusive jurisdiction and power to decide whether a claim or legal dispute is covered by this Agreement, to the fullest extent allowed under the Federal Arbitration Act or, if inapplicable, the California Arbitration Act.

(Doc. No. 12-2 at 14.) The agreement later provides under the heading "<u>SEVERABILITY</u>," that:

> If any term or provision of this Agreement is declared unenforceable by any court of competent jurisdiction or arbitrator and cannot be modified to be enforceable, such term or provision will immediately become null and void, leaving the remainder of this Agreement in full force and effect.

(*Id.* at 15.)

/////

Particularly instructive here is the Ninth Circuit's warning to district courts not to invalidate delegation provisions based on "conflicts [that] are artificial." *Mohamed*, 848 F.3d at 1209. In *Mohamed*, the Ninth Circuit rejected the district court's conclusion that the arbitration agreement at issue contained an inconsistency affecting its delegation provision, noting that "[t]he clause describing the scope of the arbitration provision was prefaced with '[e]xcept as it otherwise provides,' which eliminated the inconsistency between the general delegation provision and the specific carve-out" at issue. *Id.* Here, the delegation clause has the carve-out "to the fullest extent allowed under the Federal Arbitration Act or . . . the California Arbitration Act." (Doc. No. 2-2 at 14.) The severability clause's reference to a court is simply because "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Mohamed*, 848 F.3d at 1209 (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 21 Cal.Rptr.3d 322, 328 (2004*), as modified on denial of reh'g* (Dec. 28, 2004)).

Accordingly, the court finds that the delegation clause at issue here clearly and unmistakably delegates questions of arbitrability to an arbitrator and that any apparent conflict between the delegation and severability clauses is "artificial." *See id.* at 1209; *see also Stewart v. Acer Inc.*, No. 22-cv-04684-VC, 2023 WL 350385, at *2 (N.D. Cal. Jan. 20, 2023) (holding that "the fact that the License Agreement['s] [severability clause] anticipates that a court might someday invalidate part of the agreement does not make the express delegation discussed above any less clear")

**C. Unconscionability of the Delegation Clause**

Plaintiff next argues that the Agreement as a whole and the delegation clause specifically are unconscionable and therefore unenforceable. (Doc. No. 18 at 16–27.) "To demonstrate unconscionability of [d]efendants' delegation clause under California law, [p]laintiffs must show that the clause is both procedurally and substantively unconscionable." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024). "When considering an unconscionability [or other enforceability-related] challenge to a delegation provision, the court must consider only

arguments 'specific to the delegation provision.'" *Mohamed*, 848 F.3d at 1210 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 73 (2010)). "If the party fails to do so, a court must treat the delegation provision as valid, order arbitration, and leave 'any challenge to the validity of the Agreement as a whole for the arbitrator.'" *Abdelmasih v. Kemper Corp.*, No. 2:26-cv-04557-ODW-PDX, 2026 WL 2677305, at *2 (C.D. Cal. Sept. 11, 2026) (quoting *Rent-A-Center*, 561 U.S. at 72).

Plaintiff's argument that the delegation clause is substantively unconscionable is cursory. Throughout his opposition, plaintiff makes nine separate substantive unconscionability arguments but mentions the delegation clause only three times—twice in the subheadings and once in the body of his lack of mutuality argument. (*See* Doc. No. 18 at 21–26.) Plaintiff contends that "the Agreement (including the Delegation Clause)" is substantively unconscionable because "[p]laintiff is bound to arbitrate all claims against defendant, its parent companies, affiliates, subsidiaries, and myriad other persons and entities," but not vice versa. (*Id.* at 22–23.) Without more than a passing mention of the delegation clause, plaintiff "does not sufficiently tie his broader unconscionability arguments to the delegation clause." *See Abdelmasih*, 2026 WL 2677305, at *3 ("None of Abdelmasih's arguments . . . establish that the delegation clause itself is unconscionable."); *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009–10 (9th Cir. 2023) ("[A] party resisting arbitration must mention that it is challenging the delegation provision *and make specific arguments attacking the provision* in its opposition to a motion to compel arbitration.") (emphasis added); *Tanner v. Tax Servs. of Am., Inc.*, No. 25-cv-01940-DMR, 2025 WL 1580737, at *5 (N.D. Cal. June 4, 2025) (explaining that while the plaintiff "mention[ed] that she [was] challenging the delegation provision," she only "attack[ed] the Arbitration Agreement as a whole and include[d] only conclusory assertions that her arguments likewise appl[ied] to the delegation provision").[2]

---

[2] This is not to say that a party cannot make arguments that apply to both the agreement as a whole and the delegation clause specifically. To do so the arguments must simply be more specific when connecting the two than plaintiff has been here. *Bielski*, 87 F.4th at 1009–1010 ("[A] party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable.").

Accordingly, the court finds that plaintiff's cursory mentions of the delegation clause are insufficient to support a finding that the delegation clause is substantively unconscionable. Because substantive unconscionability is necessary to a finding of unconscionability, plaintiff has failed to demonstrate that the delegation clause unconscionable.[3] *See Heckman*, 120 F.4th at 681. Accordingly, the court will enforce the parties' delegation clause.

**D. Whether to Stay This Action**

Finally, defendants request that the court dismiss plaintiff's claims or, alternatively, stay further litigation of the case pending arbitration. (Doc. No. 12 at 2.) Plaintiff does not address either request in his opposition. (*See* Doc. No. 18.) In reply, defendants drop their request for dismissal and ask only for a stay pending arbitration. (Doc. No. 20 at 18.) "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). District courts do "not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Id.* at 475–76; *see also Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 710 (9th Cir. 2024) ("In its motion to compel arbitration filed prior to the Supreme Court's decision in *Spizzirri*, [the defendant] requested that the court dismiss or, in the alternative, stay the action pending arbitration. Since *Spizzirri* made clear that a district court does not have discretion to dismiss the action when granting a motion to compel arbitration under 9 U.S.C. § 3,

---

[3] The court notes that plaintiff states in his declaration that he received threats of disciplinary action by his supervisor if he continued to refuse to sign the Agreement. (Doc. No. 18-2 at ¶ 7–9.) Where an employer defendant requires the plaintiff employee to sign a standard form arbitration agreement to begin their employment with the defendant or to retain their existing employment with the defendant, the arbitration agreement is procedurally unconscionable. *See Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024) ("In both the prehiring and posthiring settings, courts must be particularly attuned to the danger of oppression and overreaching. When an employer makes signing an agreement a condition of applying for employment, the economic pressure exerted . . . on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.") (internal quotation marks and citations omitted) However, because the court has already found that the delegation clause of the Agreement is not substantively unconscionable, it need not determine whether the delegation clause is also procedurally unconscionable. *See Heckman*, 120 F.4th at 681.

the court is compelled to grant [the defendant's] alternative request for a stay."). Accordingly, the court will stay this action pending the completion of arbitration. *See Malik v. Malik*, No. 2:23-cv-01344-CKD, 2024 WL 4216770, at *9 (E.D. Cal. Sept. 17, 2024) (citing *Spizzirri* and staying the action pending arbitration upon the plaintiffs' request).

**CONCLUSION**

For the reasons explained above:

1. Defendants' request for judicial notice (Doc. No. 13) is DENIED;
2. Defendants' motion to compel arbitration (Doc. No. 12) is GRANTED;;
3. The parties are DIRECTED to file a status report six (6) months following the issuance of this order and every ninety (90) days thereafter regarding the status of arbitration proceedings and are DIRECTED to notify the court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision;
4. This action is STAYED pending the completion of arbitration; and
5. Because the action is now stayed pending the completion of arbitration, all currently calendared dates in this case are VACATED.

IT IS SO ORDERED.

Dated: **November 15, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE